IN RE the MARRIAGE OF:

Elizabeth A. RANDALL, Petitioner-Respondent,

v.

Jerome L. RANDALL, Respondent-Appellant.

Court of Appeals

*No. 99–0531. Submitted on briefs September 10, 1999.—Decided March 2, 2000.*

## 2000 WI App 98

(Also reported in 612 N.W.2d 737.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Sheila S. Kelley* of *Kopp, McKichan, Geyer & Skemp* of Platteville.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Eric D. Reinicke* of *Karrmann, Buggs & Baxter* of Platteville.

Before Eich, Vergeront and Deininger, JJ.

¶ 1. VERGERONT, J.  Jerome Randall appeals the provisions in the judgment of divorce from Elizabeth Randall that relate to child support and attorney fees, and the order denying his motion for reconsidera-

tion of those provisions. He contends the circuit court erroneously exercised its discretion in ordering that he pay 25% of his gross income in child support without regard to his status as a shared-time payer under WIS. ADMIN. CODE § DWD 40.04(2),[1] and in ordering that he contribute $1,000 to Elizabeth's attorney's fees. We conclude the circuit court did erroneously exercise its discretion on both points, and we therefore reverse and remand.

## BACKGROUND

¶ 2.   Jerome and Elizabeth have two children; one was eighteen and the other fifteen at the time the judgment of divorce was entered in September 1998. Pursuant to stipulated temporary orders, Elizabeth had primary placement of the children and Jerome was to pay $525 per month in child support. The principal issue in dispute between the parties at trial was physical placement, with Jerome seeking equal physical placement and Elizabeth seeking primary physical placement.

¶ 3.   With respect to child support, Jerome asked at trial that the court take into account the amount of time the court ordered the children placed with him, which, in his view, the administrative code provided for. Elizabeth asked that she receive child support of 25% of Jerome's gross income until the older child was nineteen, as long as the child was pursuing her high school degree, and then 17% of Jerome's gross income. Elizabeth testified that Jerome had not paid the children's variable costs in proportion to the time the

---

[1] At the time of trial, WIS. ADMIN. CODE ch. DWD 40 was numbered WIS. ADMIN. CODE ch. HSS 80. We will refer to the regulation as it is currently numbered.

children were placed with him under the stipulated temporary orders. Jerome's counsel objected to this line of questioning on the ground that the temporary orders directed Jerome to pay the fixed sum of $525 and said nothing about any additional amount for variable costs. The court overruled the objection, and Elizabeth testified that since the parties' separation, Jerome had not paid for expenses for the children for food, clothing, extracurricular activities and transportation in proportion to the amount of time he had with the children. Jerome testified that he had bought shoes, clothes, accessories and miscellaneous small items for the children since the separation.

¶ 4.    Elizabeth also asked at trial for $1,500 from Jerome as a contribution to her attorney's fees. She testified that she was asking for attorney fees because Jerome had "backed out of" two previous agreements that she thought they had signed in good faith, and because the expense for the appraiser was in part due to having to reschedule twice because of Jerome. On cross-examination she acknowledged that the appraisal occurred only once.

¶ 5.    After hearing the evidence and argument, the court took the matter under advisement. The court issued a written decision on custody, placement, child support and attorney fees, the terms of which were contained in the judgment of divorce. The court awarded joint custody, with primary placement during the school year with Elizabeth, placement alternating on a weekly basis between the parents during school summer vacation, and alternate placement for holidays.[2] During the school year, placement was with

---

[2] The court found that although one of the children was then eighteen, the placement schedule should apply to both children.

Jerome every other weekend from Thursday after school until returning to school Monday morning and on the alternate weeks, either a Wednesday or Thursday overnight beginning after school. Jerome was ordered to pay 25% of his gross income in child support until the older child reached age nineteen, at which time Jerome's obligation would be reduced to 17%. The decision and the judgment each further stated: "[Jerome] may apply to the court for modification of the child support upon a true and accurate showing of expenses incurred for the care of the children. Items under [WIS. ADMIN. CODE ch. DWD 40] shall be considered by the court in any reduction or modification of child support." Finally, Jerome was ordered to contribute $1,000 toward Elizabeth's attorney's fees. Neither the Memorandum Decision nor the Findings of Fact, Conclusions of Law and Judgment explained how the court reached its decisions on child support and attorney fees.

¶ 6.   Shortly after judgment was entered, Jerome moved the court to reconsider various points, including his child support obligation: he asked that this be determined under WIS. ADMIN. CODE § DWD 40.04(2) for a shared-time payer. Jerome also requested that neither party be ordered to contribute to the attorney fees of the other, arguing that the court did not explain its reasoning for ordering his contribution, the parties' incomes are essentially the same, and Elizabeth received more than one-half of the estate. The court, with a different judge presiding, denied the motion in a written order that does not state the reasons for the decision.

## DISCUSSION

*Child Support*

¶ 7.   As both parties acknowledge, the setting of child support is committed to the sound discretion of the circuit court, and we affirm the circuit court's decision if it examined the relevant facts, applied the correct standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See Luciani v. Montemurro-Luciani*, 199 Wis. 2d 280, 294, 544 N.W.2d 561 (1996). Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision. *See State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983).

¶ 8.   Before explaining the positions of the parties, we set forth the statutory and regulatory framework. Except as provided in WIS. STAT. § 767.25(1m) (1997–98),[3] "the court shall determine child support payments by using the percentage standards established by the department under s. 49.22(9)." Section 767.25(1j). WISCONSIN STAT. § 49.22(9) provides:

> The department shall promulgate rules that provide a standard for courts to use in determining a child support obligation based upon a percentage of the gross income and assets of either or both parents. The rules shall provide for consideration of

---

[3] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

the income of each parent and the amount of physical placement with each parent in determining a child support obligation in cases in which a child has substantial periods of physical placement with each parent.

Upon request of either party, the court may modify any child support payment determined under subsec. (1j) if, after considering certain enumerated factors, the court finds that use of the percentage standard is unfair to the child or to either party. *See* § 767.25(1m).[4] If the

---

[4] WISCONSIN STAT. § 767.25(1m) provides in full:

Upon request by a party, the court may modify the amount of child support payments determined under sub. (1j) if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties:

(a)   The financial resources of the child.

(b)   The financial resources of both parents as determined under s. 767.255.

(bj)   Maintenance received by either party.

(bp)   The needs of each party in order to support himself or herself at a level equal to or greater than that established under 42 U.S.C. § 9902 (2).

(bz)   The needs of any person, other than the child, whom either party is legally obligated to support.

(c)   The standard of living the child would have enjoyed had the marriage not ended in annulment, divorce or legal separation.

(d)   The desirability that the custodian remain in the home as a full-time parent.

(e)   The cost of day care if the custodian works outside the home, or the value of custodial services performed by the custodian if the custodian remains in the home.

(ej)   The award of substantial periods of physical placement to both parents.

(em)   Extraordinary travel expenses incurred in exercising the right to periods of physical placement under s. 767.24.

(f)   The physical, mental and emotional health needs of the child, including any costs for health insurance as provided for under sub. (4m).

(g)   The child's educational needs.

9

court does make such a finding, it "shall state in writing or on the record the amount of support that would be required by using the percentage standard, the amount by which the court's order deviates from that amount, its reasons for finding that use of the percentage standard is unfair to the child or the party, its reasons for the amount of the modification and the basis for the modification." Section 767.25(1n). In other words, "the percentage standard established by the department under s. 49.22(9)" is the presumptive standard for determining child support. Section 767.25(1j).

¶ 9.   Chapter DWD 40 of the Wisconsin Administrative Code is promulgated pursuant to WIS. STAT. § 49.22(9). *See* ch. DWD 40, preface. Under these rules "standard" or "percentage standard" means "the percentage of income standard under s. DWD 40.03(1) which, when multiplied by the payer's base or adjusted base, results in payer's child support obligation." WIS. ADMIN. CODE § DWD 40.02(27). WISCONSIN ADMIN. CODE § DWD 40.03(1), "Determining child support using the percentage standard," explains the method for determining the income of the payer and applying specified percentages to that income according to the number of children—17% for one child and 25% for two children. Section DWD 40.03(7) permits a deviation from "the amount of child support payments determined under sub. 1," in language that tracks WIS. STAT. § 767.25(1m).

---

(h)   The tax consequences to each party.

(hm)   The best interests of the child.

(hs)   The earning capacity of each parent, based on each parent's education, training and work experience and the availability of work in or near the parent's community.

(i)   Any other factors which the court in each case determines are relevant.

¶ 10. WISCONSIN ADMIN. CODE § DWD 40.04 provides that child support "may be determined under special circumstances" according to prescribed formulas that reduce the amount of support determined under WIS. ADMIN. CODE § DWD 40.03(1): one of these special circumstances is that of the shared-time payer. *See* § DWD 40.04(2). A "shared-time payer" is "a payer who provides overnight child care or equivalent care beyond the threshold and assumes all variable child care costs in proportion to the number of days he or she cares for the child under the shared-time arrangement." WIS. ADMIN. CODE § DWD 40.02(25). The threshold is 30% of the year or 109.5 out of every 365 days. *See* § DWD 40.02(28). Variable costs are "costs that include but are not limited to payment for food, clothing, school, extracurricular activities, recreation and day care." *See* § DWD 40.02(30).

¶ 11. Jerome contends the circuit court erroneously exercised its discretion because it did not apply the shared-time payer formula of WIS. ADMIN. CODE § DWD 40.04(2), did not explain why it did not, and the record does not provide an explanation. An order that he pay 25% (or 17%) of his income in child support is unfair to him, he asserts, given the substantial amount of time the children are with him under the terms of the judgment. Elizabeth responds that the court's reasoning can be discerned from the provision in the judgment permitting a modification if Jerome can demonstrate that he is paying the variable costs and from the portion of the record where the court and attorneys engage in some dialogue during Elizabeth's testimony on variable costs. In Elizabeth's view, the court decided that Jerome was not entitled to the shared-time payer formula because he did not prove that he had paid a proportionate amount of the varia-

11

ble costs for the time the children were with him during the separation and until the time of trial.

■

¶ 12. Underlying the parties' positions, although not directly addressed by either, is a dispute over the proper construction of WIS. STAT. § 767.25(1j), and we address this first. The issue is whether the reference in § 767.25(1j) to "the percentage standards established by the department under s. 49.22(9)" includes only the percentage standard determined under WIS. ADMIN. CODE § DWD 40.03(1) (we will refer to this as the "straight percentage standard") or includes, in addition, the formulas established in WIS. ADMIN. CODE § DWD 40.04. The result of the former interpretation is that it is Jerome's burden to show that a support payment of 25% (or 17%) of his gross income is unfair to him and the court should instead apply § DWD 40.04(2). The result of the latter interpretation is that, if Jerome is a shared-time payer under § DWD 40.04(2), Elizabeth has the burden of establishing that it is unfair to apply that formula. The interpretation of a statute presents a question of law, which we review de novo. *See Brown v. Brown*, 177 Wis. 2d 513, 516, 503 N.W.2d 280 (Ct. App. 1993).

¶ 13. Although there are arguments to support both interpretations of WIS. STAT. §§ 767.25(1j) and 49.22(9), we conclude the supreme court has already decided this issue in *Luciani*. There the court considered whether the circuit court erroneously exercised its discretion "when it did not deviate from the percentage guideline standards, where the payee earns a substantially greater income than the payer." *Luciani*, 199 Wis. 2d at 285. The standard that the circuit court applied was that for a shared-time payer, under WIS. ADMIN. CODE § DWD 40.04, and it rejected the payer's

12

argument that it should deviate from that standard because that standard was unfair due to the high income of the payee. *See id.* at 289–90. The supreme court agreed with the circuit court, concluding that the payer had not established "that the presumptive application of the percentage standards would be unfair." *Id.* at 304. In explaining how the circuit court had computed what it (the supreme court) referred to throughout its decision as the "percentage standard," the supreme court explained in a footnote:

> Application of the straight percentage standards would require Luciani to pay 25% of his gross income towards child support. However, because Luciani has the children for 32% of the overnight placement, the court *is required to reduce this figure* in accordance with the "shared-time" formula provided in [DWD Table 40.04(2)(b)] (i.e., 93.34%). Luciani's proper support obligation is therefore 24% of his gross income.

*Id.* at 287 n.5 (emphasis added).

¶ 14.  Although the parties in *Luciani* were not disputing that the shared-time payer formula was part of the presumptive "percentage standard," we cannot overlook the supreme court's statement that the shared-time payer formula, rather than the straight percentage standard, was required because Luciani had the children for 32% of the overnights. The court did not merely implicitly accept the parties' assumption that the shared-time payer formula was part of the presumptive percentage standards, but expressly stated that it was *"required"* because of the number of overnights.

¶ 15.  We recognize that interpreting WIS. STAT. § 767.25(1j) to include the shared-time payer formula

in WIS. ADMIN. CODE § DWD 40.04(2) as well as the straight percentage standards in WIS. ADMIN. CODE § DWD 40.03(1) appears to conflict with § DWD 40.03(7) and with the discretionary "may" in § DWD 40.04(2).[5] However, we are bound by the supreme

---

[5] The predecessor to WIS. ADMIN. CODE ch. DWD 40 was first promulgated in 1987, *see* Register, Jan. 1987 No. 373, effective Feb. 1, 1987 as WIS. ADMIN. CODE ch. HSS 80. At that time, WIS. STAT. § 767.25(1j) (1985–86) directed the court to determine support "by using the percentage standard established by the department under WIS. STAT. § 46.25(9)(a)," "[e]xcept as provided in subsec. (1m)," and, if the court determined that based on the factors listed under subsec. (1m) or others that the percentage standard was unfair, then the court was authorized to consider the guidelines established under § 46.25(9)(b) in modifying the amount of support determined under subsec. (1j). WIS. STAT. § 767.25(1n)(a) (1985–86). WISCONSIN STAT. § 46.25(9) (1985–86) was the predecessor to WIS. STAT. § 49.22(9). Section 46.25(9)(a) (1985–86) required the department to adopt and publish a standard "based upon a percentage of the gross income and assets of either or both parents"—substantially the same as the first sentence of the present § 49.22(9); para. (b) directed the department to establish "guidelines for courts to consider in determining child support under ss. 767.25(1m). . . ." WISCONSIN ADMIN. CODE ch. HHS 80 as originally promulgated tracked this statutory framework, with the percentage standard in § HHS 80.03 carrying out the directive of § 46.25(9)(a) and the special circumstances in § HHS 80.04 carrying out the directive of § 46.25(9)(b).

WISCONSIN STAT. § 46.25(9) (1985–86) was subsequently amended to remove the distinction between rules in para. (a) and guidelines in para. (b), by deleting para. (b) and adding the second sentence of what is now WIS. STAT. § 49.22(9) to para. (a). *See* 1993 Wis. Act 481 § 12. At the same time, WIS. STAT. § 767.25(1j) was amended to require that child support, except as provided in subsec. (1m), be determined "by using the percentage standard under s. 46.25(9)," and subsec. (1n) was

14

court's decision in *Luciani*.[6] We therefore hold that under § 767.25(1j), the circuit court must determine Jerome's support obligation by using § DWD 40.04(2) if he is a shared-time payer, unless the court determines that use of § DWD 40.04(2) would be unfair to Elizabeth, in which case § 767.25(1n) applies.

¶ 16.   We now turn to the central dispute between the parties: whether Jerome is a shared-time payer. There is no dispute that, under the terms of the divorce judgment, he provides overnight care to the children beyond the threshold. However, Elizabeth argues that, because he did not assume all variable costs in proportion to the time he had the children under the stipulated temporary orders, when he also had the children overnight over the threshold amounts,[7] he is not a shared-time payer. Jerome does not assert that he did assume variable costs in proportion to the overnights

repealed. *See* 1993 Wis. Act. 481 §§ 82, 84. As a result of these changes, it appears that the formulas for special circumstances were no longer guidelines that were to be used if the straight percentage standards were unfair, but instead were part of the standards that were mandated under subsec. (1j) unless the court found them unfair. However, the department did not make corresponding changes in WIS. ADMIN. CODE ch. HHS 80.

[6] In *Raz v. Brown*, 213 Wis. 2d 296, 302–06, 570 N.W.2d 605 (Ct. App. 1997), we followed *Luciani v. Montemurro-Luciani*, 199 Wis. 2d 280, 294, 544 N.W.2d 561 (1996), treating the shared-time payer formula as part of the presumptive percentage standard under WIS. STAT. § 767.25(1j), which a party had to show was unfair under § 767.25(1m).

[7] Elizabeth does not provide computations for her assertion that Jerome had the children under the temporary orders for more overnights than the threshold. However, since Jerome does not dispute this, we will take it as conceded, *see Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994).

under the stipulated temporary orders. However, he points out that such a requirement was not part of the stipulations or the temporary orders based upon the stipulations. In Jerome's view the court therefore erred in concluding he is not a shared-time payer for purposes of his support obligation under the final judgment, solely because he was not already assuming variable costs in proportion to the overnights. The issue presented by this dispute is whether the regulation requires that the payer must demonstrate that he or she has already assumed variable costs in proportion to the overnights before he or she qualifies as a shared-time payer under WIS. ADMIN. CODE § DWD 40.04(2). This also presents a question of law, which we review de novo. *See Brown*, 177 Wis. 2d at 516.

¶ 17.   We conclude that, while Elizabeth's reading of the regulation may be a reasonable one, it is not the most reasonable one. If we adopt her interpretation, the shared-time payer formula would never be applicable when parents first separate and either they or a family court commissioner or a circuit court decides there should be substantial time with both parents. In such situations there would be no track record of variable costs in separate households to rely on. Similarly, when there is a significant change in a child's physical placement which increases the number of overnights with one parent to an amount over the threshold, that parent may not be able to show that he or she assumed proportional variable costs under the existing physical placement and support order, but may fully intend to do so when the child is spending more time and more overnights with him or her. Under Elizabeth's interpretation of the regulation, before the shared-time payer formula could be applied, there would always be some period of time during which a

16

payer with physical placement over the threshold was both assuming variable costs in proportion to the number of overnights and paying a support obligation that did not take the substantial physical placement into account. There would need to be one court proceeding that established physical placement over the threshold; a period of time during which the straight percentage applied and the payer also assumed the variable costs in proportion to the overnights; and then another court proceeding at which the payer could demonstrate that he or she had met the variable cost requirement and was therefore entitled to have support reduced under the shared-time payer formula. We reject this interpretation as inconsistent with the purpose of WIS. ADMIN. CODE § DWD 40.04(2).

¶ 18. The evident assumption underlying the shared-time payer formula is that parents who have physical placement for a substantial number of overnights or the equivalent generally assume the variable costs for the children when the children are with them, and it is unfair to determine their support obligation based on the straight percentage standard which does not take the reality of the physical placement into account. *See* Connie M. Chesnik, *HSS 80 Revisited: The Percentage of Income Standard Experience,* 10 WIS. J. FAM. L. 70, 86 (1990). In addition, one purpose of having rules that apply in setting support unless they are unfair to a party or child in a particular case is to simplify the procedure for determining child support. Requiring a second hearing in every case to establish a track record of assuming proportional costs puts a financial burden on the payer during the time necessary to establish a track record and makes the procedure more complex.

¶ 19.  We conclude it is more reasonable to interpret WIS. ADMIN. CODE § DWD 40.04(2) to require the assumption of proportional variable costs as a continuing condition of the application of the shared-time payer formula, rather than as a condition that must already have been met before the formula can be applied. The proper inquiry for the court, therefore, is whether the payer will be assuming variable costs in proportion to the number of days the court is ordering placement with that parent. If the parties have already separated, evidence of how variable costs have been handled is relevant; but the fact that a payer has not in the past assumed proportional variable costs does not, in itself, mean that he or she cannot be considered a shared-time payer under § DWD 40.04(2).

¶ 20.  We now examine the circuit court's decision on child support in light of the regulation as we have construed it. Because the court did not explain its reasoning, we do not know whether the circuit court viewed the regulation as requiring that Jerome demonstrate he had already assumed the variable costs in proportion to the number of overnights, which we have held is an incorrect view, or whether the court was considering Jerome's past practice as evidence that he would not be assuming proportional costs, which the court could do. If the latter is the reasoning of the court, we are uncertain why it ordered support at the straight percentage, without *any* reduction for the substantial placement with Jerome. Even if the court decided that the record did not support the application of the shared-time payer formula, the substantial physical placement with Jerome is still a relevant factor in deciding the amount of support to order. *See* WIS. STAT. § 767.25(1m)(ej). We are unable to tell from the court's

18

decision if it took the physical placement schedule it established in the judgment into account in setting support at 25% (or 17%), and, if it did, why it decided the schedule did not warrant any adjustment to the straight percentage standard.

¶ 21.   We have reviewed the entire record and, in particular, have studied the court's comments and the parties' arguments during trial when the issue of variable costs was the subject of testimony and the closing arguments. However, we are unable to answer our questions about the court's reasoning with any confidence. We therefore must reverse the provision of the judgment regarding child support and remand for further proceedings consistent with this opinion.

*Attorney Fees*

¶ 22.   The circuit court in a divorce action may award attorney fees to one party based on the financial resources of the parties, *see* WIS. STAT. § 767.262(1); because the other party has caused additional fees by overtrial, *see Johnson v. Johnson,* 199 Wis. 2d 367, 376–77, 545 N.W.2d 239 (Ct. App. 1996), or because the other party refuses to provide information which would speed the process along. *See Lellman v. Mott,* 204 Wis. 2d 166, 175, 554 N.W.2d 525 (Ct. App. 1996). The decision whether to award attorney fees is committed to the circuit court's discretion. *See id.* at 175–76.

¶ 23.   Jerome contends the court did not properly exercise its discretion in ordering that he contribute $1,000 to Elizabeth's attorney's fees because it provided no explanation for its decision. Elizabeth responds that the court based its decision on her testimony that Jerome had backed out of two stipulations

and had caused the appraisal to be rescheduled twice, and she contends the circuit court properly exercised its discretion in doing so. We agree from a reading of the entire record that this testimony was probably the reason the court awarded attorney fees, rather than because of a comparison of Elizabeth's and Jerome's finances under WIS. STAT. § 767.262(1). However, we are unable to understand how Elizabeth's testimony supported an award of $1,000.

¶ 24.  Since the appraisal occurred only once, it is not readily apparent that any significant amount of attorney time was incurred simply by having to reschedule it twice. And although Elizabeth testified that Jerome "backed out of" two agreements, there was no testimony as to the circumstances surrounding those agreements, the reasons Jerome backed out, or the amount of additional attorney time caused by his doing so. During Elizabeth's cross-examination, the court's attention was drawn to a stipulation and temporary order filed December 26, 1996, and a stipulated and amended temporary order filed July 7, 1997, which altered the details of the physical placement schedule (by incorporating a document entitled Partial Final Stipulation), but still gave Elizabeth primary physical placement. As we understand the brief testimony and these documents, apparently after Jerome agreed to primary physical placement with Elizabeth in the Partial Final Stipulation, he changed his mind and decided he wanted equal placement. However that fact, in itself, does not constitute overtrial or unreasonable conduct. In divorce actions, a party may withdraw from stipulations prior to the final trial. *See Evenson v. Evenson*, 228 Wis. 2d 676, 686, 598 N.W.2d 232 (Ct. App. 1999).

20

¶ 25. Similarly, the fact that the circuit court adopted the position of Elizabeth's expert and the guardian ad litem's recommendation does not, in itself, indicate that Jerome was engaging in overtrial or being unreasonable in his request for equal placement. His position was supported at trial by his expert, Dr. Beverly Bliss, and by the Grant County social worker who testified that the children wanted equal placement and he saw no reason to believe that was not for the best. A party's attempt to persuade the court that he or she should have equal placement, when that position has this type of support, does not, in itself, constitute overtrial or litigiousness. There are no motions in the record that would indicate Jerome was delaying discovery or withholding information on discovery. There may be a basis for the circuit court's conclusion that Jerome unreasonably caused Elizabeth to incur attorney fees, but we are unable to tell what that is from the record. We conclude that the issue of attorney fees must also be remanded in order that the court may set forth its reasons for awarding attorney fees, reconsidering its decision to do so if appropriate.

*By the Court.*—Judgment and order reversed and cause remanded.