In re the Marriage of:

Sandra Lynn Modrow, Petitioner-Respondent,

v.

Kim Jerome Modrow, Respondent-Appellant.

Court of Appeals

*No. 00–1868. Submitted on briefs June 6, 2001.—Decided August 29, 2001.*

2001 WI App 200

(Also reported in 634 N.W.2d 852.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of Kim Jerome Modrow, pro se.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Carrie R. Michelson*, Racine.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. NETTESHEIM, P.J. Kim Jerome Modrow appeals pro se from the child support, property division,

and attorney fee provisi ons of a judgment of divorce. At the time of the divorce, Kim was incarcerated for his fifth offense of operating a motor vehicle while under the influence (OWI). Kim contends that the family court erroneously exercised its discretion when it: (1) based his child support obligation on his earning capacity rather than his actual income, (2) delayed the disbursement of his property division, and (3) offset his property division by the amount of any unpaid child support accruing during his incarceration. We reject these arguments. However, we agree with Kim's further argument that the facts do not support the attorney's fees award. Finally, we reject Sandra Lynn Modrow's motion for costs and attorney's fees on appeal. We affirm in part and reverse in part.

### FACTS

¶ 2. Kim and Sandra were married on September 17, 1988. On February 9, 1999, Kim was arrested and charged with a fifth offense for OWI. He was subsequently sentenced to a five-year prison term on June 9, 1999. On August 18, 1999, Sandra filed for divorce from Kim. Sandra additionally filed an order to show cause for a temporary order for child support for their two minor children. Kim appeared pro se in all of the trial court proceedings.

¶ 3. At the time of the temporary hearing, Kim was incarcerated and reported earnings of approximately $22 per month.[1] The family court commissioner entered a temporary order awarding Sandra temporary legal custody and primary placement of the children and ordering Kim to pay child support in the amount of $100 per week. The family court commissioner based

---

[1] Kim appeared at the hearing by speakerphone.

Kim's child support obligation on his earnings of $11.80 per hour from his full-time employment prior to his incarceration.

¶ 4. Kim requested and received de novo review of the temporary order on January 12, 2000. In a written order filed January 26, 2000, the family court found that Kim's incarceration and subsequent change in financial circumstances was the result of a voluntary and intentional act. The court ordered the existing temporary order for child support in the amount of $100 per week to remain in full force and effect until the final divorce hearing. Sandra asked that Kim contribute to her attorney's fees relating to the hearing. The court held this request open pending further proceedings.

¶ 5. The final divorce hearing was held on March 29, 2000, and the family court filed its written decision on June 25, 2000. With respect to child support, the court found that prior to Kim's incarceration, his gross monthly income was $2029.60. Despite Kim's continued incarceration, the court ordered Kim to continue paying child support in the sum of $100 per week.

¶ 6. As to the property division, the parties' primary asset was the equity in the marital residence, which was awarded to Sandra. The court ordered an equal division of the parties' marital property and then reduced Kim's portion by sums owing to Sandra for various expenses. The court ordered that Sandra make a balancing payment to Kim in the amount of $11,850.42 with interest at the rate of 8% per annum on any unpaid amount. The court also ordered that Sandra's property division payments to Kim would be

894

offset dollar for dollar by any unpaid child support accruing during Kim's incarceration.[2]

¶ 7. The family court also ordered Kim to contribute $300 to Sandra's attorney's fees incurred as a result of the earlier de novo review of the family court commissioner's temporary child support order.

¶ 8. Kim appeals the child support, property division and attorney's fees provisions of the judgment.

### DISCUSSION

### Standard of Review

¶ 9. The division of the marital estate and the determination of the amount of child support are committed to the circuit court's discretion. *Sellers v. Sellers*, 201 Wis. 2d 578, 585, 549 N.W.2d 481, 484 (Ct. App. 1996). The same is true as to an attorney fees award. *Bisone v. Bisone*, 165 Wis. 2d 114, 123–24, 477 N.W.2d 59 (Ct. App. 1991). We will uphold the circuit court's discretionary decision if the court makes a rational and reasoned decision and applies the correct legal standard to the facts of record. *Sellers*, 201 Wis. 2d at 585.

### Child Support

¶ 10. Kim continues his self-representation on appeal. He contends that the circuit court erred in denying his request at trial to modify the amount of child support based on his incarceration. Kim relies on

---

[2] The family court noted that upon Kim's completion of his incarceration, the parties would likely need to hire an accountant to calculate the amount of the equalization payment owing from Sandra to Kim, if any.

*Voecks v. Voecks*, 171 Wis. 2d 184, 491 N.W.2d 107 (Ct. App. 1992), arguing that his incarceration constitutes a substantial change of circumstance sufficient to warrant the modification of his child support obligation pursuant to WIS. STAT. § 767.32 (1999–2000).[3]

¶ 11. We reject Kim's reliance on *Voecks*. There, the court of appeals addressed whether incarceration can be a substantial change in circumstances warranting modification of a child support award *set out in the original divorce judgment. Voecks*, 171 Wis. 2d at 186–87. But here the family court's child support award was not the product of a review of the temporary order issued by the family court commissioner pursuant to WIS. STAT. §§ 767.23(1n) and 767.13(6). Rather, the family court's award stands or falls on its own merits based on the evidence at the trial. Therefore, the correctness of the award is not measured under the law of revision of judgments as set out in WIS. STAT. § 767.32(1m).[4] The family court was not required to make a finding of a substantial change of circumstances pursuant to § 767.32(1m) in order to set the appropriate level of support at the time of divorce.

¶ 12. In summary, Kim's child support issue is not governed by WIS. STAT. § 767.32(1m) or *Voecks*.[5]

---

[3] All references to the Wisconsin Statutes are to the 1999–2000 version.

[4] This is so even though the amount of the child support award happens to mirror that set out in the temporary order.

[5] *Voecks v. Voecks*, 171 Wis. 2d 184, 491 N.W.2d 107 (Ct. App. 1992), does not apply for an additional reason. In *Voecks*, the payor was incarcerated *after* the judgment was entered. *Id.* at 186. Here, Kim was already incarcerated when the action was commenced.

¶ 13. Although Kim incorrectly frames his argument in terms of a modification of child support, his primary objection is that the family court failed to adequately consider his incarceration in setting child support at the final divorce hearing. Neither Kim nor Sandra cites to any Wisconsin case law that has addressed this issue, nor have we found any.[6] However, both parties discuss *Parker v. Parker*, 152 Wis. 2d 1, 447 N.W.2d 64 (Ct. App. 1989), and *Voecks*, which address whether incarceration constitutes a substantial change of circumstances warranting modification of an existing child support order. While not directly on point, we address both cases.

¶ 14. In *Parker*, the parties were divorced in 1974, at which time Wayne Parker was ordered to pay $40 per week for child support. *Parker*, 152 Wis. 2d at 3. Twelve years later, Wayne was convicted of theft. His five-year prison sentence was stayed and he was placed on probation for five years. *Id.* During his probation period, Parker was found in contempt for his failure to pay child support. *Id.* He had accumulated arrearages of approximately $22,000. *Id.* Parker's probation was later revoked and he was sent to prison. *Id.* Parker petitioned for a suspension of his child support obligation during his incarceration. *Id.* The family court denied relief on the grounds that Parker's voluntary and intentional acts caused his plight. *Id.*

¶ 15. On appeal, we upheld the family court's ruling, holding that child support need not automati-

---

[6] We note that Sandra cites to an unpublished decision of the court of appeals throughout her appellate brief. On March 12, 2001, this court ordered that we would disregard "all references in the respondent's brief to an unpublished court of appeals case, *Voigt v. Voigt*, No. 98–3234."

cally terminate during incarceration; rather, the decision as to whether to terminate a support order is committed to the discretion of the circuit court. *Id*. at 6. In deciding the issue, the family court may consider the intentional nature of the crime involved, the likelihood of future income, and other relevant evidence. *Id*. We agreed with the family court that "Parker need not be excused of his child support obligation because of a willful act that resulted in his imprisonment." *Id*. at 5. We noted that Parker certainly could have anticipated that his unlawful activity and subsequent probation violation might result in imprisonment and that he need not have acted willfully to avoid his child support duty. *Id*. at 5–6. Finally, we recognized that Parker's children's needs would not diminish upon his entry into prison. *Id*. at 6.

¶ 16. In *Voecks*, we similarly upheld the family court's exercise of discretion although it reached the opposite result. There, the family court determined that William Voecks' incarceration constituted a substantial change of circumstances sufficient to warrant a reduction in child support. *Voecks*, 171 Wis. 2d at 186. Relying on *Parker*, Cheryl Voecks argued that child support should not be reduced due to imprisonment resulting from voluntary and intentional criminal acts. *Voecks*, 171 Wis. 2d at 188. We did not agree. We held that even though incarceration results from intentional criminal conduct, it is a change in circumstances that gives a circuit court competence to review a child support order and may be considered by the circuit court in determining whether it should exercise its discretion to modify child support. *Id*.

¶ 17. Although *Parker* and *Voecks* dealt with the modification of child support after an initial judgment

had been entered, we nevertheless find their reasoning instructive as to whether a circuit court may consider a party's incarceration in determining an initial child support obligation. We conclude that incarceration is a valid factor for a family court to consider in arriving at an initial determination of child support because of the impact it has on the payor's employability due to what may be voluntary and unreasonable acts. In exercising its discretion, the court may consider whether the crime was of an intentional nature, its potential effect on the payor's future income, the assets of the payor, how the needs of the children will be met during the payor's incarceration and any other factors which the court deems relevant.

¶ 18. In this case, the family court acknowledged, pursuant to *Voecks* and *Parker*, that incarceration was among the relevant factors in determining child support. And the court otherwise thoroughly addressed the issues presented by Kim's incarceration.[7] The court observed that Kim's incarceration was the result of his choice to operate a motor vehicle while intoxicated despite his four previous OWI convictions. The court considered the impact Kim's incarceration might have

---

[7] Kim relies on *State v. Stutesman*, 221 Wis. 2d 178, 585 N.W.2d 181 (Ct. App. 1998), in support of his argument that the circuit court erroneously failed to consider the circumstances of his case apart from his incarceration for OWI. We conclude that *Stutesman* has no bearing on this case. *Stutesman* was a criminal case where we held that the defendant was constitutionally entitled to present evidence of his incarceration as a defense to a charge of criminal nonsupport. *Id.* at 181–82. Moreover, citing *Parker*, we noted in *Stutesman* that "depending on the circumstances, a trial court may properly exercise its discretion and deny a reduction in child support because of incarceration." *Stutesman*, 221 Wis. 2d at 185.

on his future income and found that if Kim was unsuccessful in finding comparable employment upon his release, he could petition the court for a modification. In addition, the court noted that Kim's primary asset was his portion of the equity in the parties' marital residence. The court determined that Sandra would have a difficult time meeting the needs of the children on her income alone during Kim's incarceration and that Kim's child support obligation would be paid from his proceeds of the property division.

¶ 19. We additionally note that the family court's decision to base Kim's child support obligation on his earning capacity is supported by WIS. STAT. § 767.25, the statute governing child support. The statute provides, in relevant part, that the court shall "[o]rder either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child." Sec. 767.25(1)(a). In addition, "the court may consider all relevant financial information or other information relevant to the parent's earning capacity. . . ." Sec. 767.25(1g). Furthermore, "the court shall determine child support payments by using the percentage standard established by the department under s. 49.22(9)." Sec. 767.25(1j). However, § 767.25(1m) permits the family court to deviate from the child support percentage standard if certain factors are satisfied.

¶ 20. With respect to earning capacity, WIS. ADMIN. CODE § DWD 40.03(3) provides in relevant part:

> SUPPORT OBLIGATION BASED ON EARNING CAPACITY. In situations where the income of the parent obligated to pay child support in accordance with the [percentage standard] is less than that parent's earning capacity . . . the court may establish support by applying the percentage standard to:

(a) An amount determined by the court to represent the payer's ability to earn, based on the payer's education, training and work experience, and the availability of work in or near the payer's community. . . .

The family court's application of the percentage standard to Kim's earning capacity is supported by § DWD 40.03(3).[8]

■■■

¶ 21. The law is well settled that a payor's earning capacity is properly considered when the payor's reduction in income is voluntary and unreasonable. *State v. T.J.W.*, 143 Wis. 2d 849, 853–54, 422 N.W.2d 890 (Ct. App. 1988). Here, the family court observed that Kim's incarceration was the result of his conviction for his fifth offense of OWI. While acknowledging that alcoholism is a disease, the court found that Kim voluntarily chose to operate a vehicle while intoxicated. The court found this decision to be unreasonable. We agree. In light of Kim's OWI history, he is reasonably held to have anticipated that further OWI conduct would result in his incarceration and interfere with the ability to support his children. A parent remains obligated to make reasonable choices that will not deprive his or her children of the support to which they are entitled. *See id.*

---

[8] We appreciate that the amount of the child support award is slightly less than the amount called for under a strict mathematical application of the percentage standards. However, we deem the difference to be de minimus and therefore we conclude that the family court did not deviate from the percentage standards. Thus, we do not address Kim's further argument that the family court failed to consider the factors set forth in WIS. STAT. § 767.25(1m) in choosing to deviate from the standards.

¶ 22. Based on the family court's findings and application of the law, we conclude that the court properly exercised its discretion in setting Kim's initial support obligation under the judgment.

### *Property Division*

¶ 23. Kim argues that the family court erroneously exercised its discretion in refusing to disburse to him his $11,850 balancing share of the marital estate. He argues that the family court erroneously "seized" his portion of the property division "as a guarantee . . . for the payment of <u>future child support</u>."[9]

¶ 24. The family court ordered an equal division of Kim and Sandra's marital estate. At the time of divorce, their divisible marital estate consisted solely of the equity in their marital residence, which the court awarded to Sandra. In order for Sandra to make an equalizing payment to Kim, she would need to sell or refinance the marital residence. Recognizing that Sandra would be struggling financially as the sole provider for the parties' minor children, the court delayed Sandra's obligation to equalize the property division until after Kim's incarceration terminates. The court ordered Sandra to pay interest of 8% per annum on the unpaid portion of Kim's property division. The court

---

[9] We note that Kim's appellate brief expresses some confusion as to whether the circuit court created a trust pursuant to WIS. STAT. § 767.31 to manage Kim's portion of the marital estate to be used for child support. While the circuit court briefly discussed doing so, there is nothing in the record or the judgment of divorce to indicate that it did. Rather, Kim's portion of the marital estate remains in the equity in the parties' marital residence, which was awarded to Sandra.

also provided for a dollar-for-dollar offset of Kim's child support obligation against the amount due to him from Sandra.

¶ 25. We uphold the family court's discretionary decision. A court may delay the equalization of the property division so long as it charges interest on any unpaid amount. *See Duffy v. Duffy*, 132 Wis. 2d 340, 349, 392 N.W.2d 115 (Ct. App. 1986); *Jasper v. Jasper*, 107 Wis. 2d 59, 69–70, 318 N.W.2d 792 (1982). The court's innovative provision properly addresses the particular circumstances of this case by not only assuring the payment of child support by an offset against the property division, but also preserving the home as a residence for the parties' minor children as long as Kim is incarcerated. We are satisfied that the family court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See Sharon v. Sharon*, 178 Wis. 2d 481, 488, 504 N.W.2d 415 (Ct. App. 1993).

### Attorney's Fees

¶ 26. The final issues on appeal relate to attorney's fees both at the trial court and appellate court levels.

¶ 27. At the final hearing, the family court ordered Kim to contribute $300 to Sandra's attorney's fees incurred as a result of his request for a de novo review of the family court commissioner's temporary child support order. Kim argues that this award is not supported by the facts.

¶ 28. "The circuit court in a divorce action may award attorney fees to one party based on the financial resources of the parties, *see* WIS. STAT. § 767.262(1);

because the other party has caused additional fees by overtrial, or because the other party refuses to provide information which would speed the process along." *Randall v. Randall*, 2000 WI App 98, ¶ 22, 235 Wis. 2d 1, 612 N.W.2d 737 (citations omitted).

¶ 29. Here, the family court noted that Kim's de novo review was not successful and that it believed Kim's argument with respect to child support to be without merit. We view that statement as a ruling that Kim's de novo review was either overtrial within the meaning of *Randall* or frivolous under WIS. STAT. § 814.025. However, Kim was entitled to a de novo review of the family court commissioner's decision pursuant to WIS. STAT. § 767.13(6). And, as our preceding discussion reveals, the effect of a payor's existing incarceration on a child support award, whether temporary or final, presents an issue of first impression. Therefore, Kim's stance on this issue was neither overtrial nor frivolous.

¶ 30. We also observe that the financial resources of the parties reveal that that Kim is in no better position to pay attorney fees than Sandra. WIS. STAT. § 767.262(1)(a). While we have held that Kim's child support obligation can be based on his earning capacity, we do not extend that holding to attorney fees. Child support is a special obligation of a parent. Attorney fees of the opposing party are not. Here, Kim should have reasonably anticipated that a further OWI conviction could impact his ability to support his children. But to hold that he should have reasonably anticipated that such conduct would also result in attorney's fees to Sandra is too far a stretch. Based on the facts of record, we conclude that the circuit court

erroneously exercised its discretion in awarding a contribution of attorney's fees to Sandra.

¶ 31. As a final matter, we address Sandra's motion for costs and attorney's fees on appeal pursuant to WIS. STAT. § 809.25(3). Sandra contends that Kim's appeal is frivolous and Kim should have known that his appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law. But we have already noted the absence of controlling law as to how a payor's existing incarceration affects an initial determination of child support. From that, it follows that Kim's appeal is not frivolous. We deny Sandra's motion for costs and attorney's fees on appeal.

### CONCLUSION

¶ 32. We conclude that a party's incarceration is a valid factor for a family court to consider when making an initial determination of child support. We further conclude that the family court properly exercised its discretion in basing Kim's child support obligation on his earning capacity and in providing for an offset of his child support obligation against his property division payout. We affirm the circuit court's judgment with respect to both child support and property division.

¶ 33. Finally, we conclude that there is no basis for an award of attorney's fees either at trial or on appeal. We therefore reverse that portion of the judgment awarding attorney's fees to Sandra.

*By the Court.*—Judgment affirmed in part and reversed in part.