COURT OF APPEALS
DECISION
DATED AND FILED

September 20, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No.    **2019AP2134**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2011ME127A**

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE MENTAL COMMITMENT OF **R. G. K.**:

OUTAGAMIE COUNTY,

    PETITIONER-RESPONDENT,

  V.

R. G. K.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Reversed.*

¶1    STARK, P.J.[1]    Rick[2] appeals from orders extending his commitment and for the involuntary administration of medication and treatment entered

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

pursuant to WIS. STAT. ch. 51. Rick advances several arguments on appeal: (1) he did not receive proper notice of the recommitment hearing; (2) the circuit court does not have authority to grant a default judgment in ch. 51 cases; (3) the court erroneously exercised its discretion by entering a default judgment against him for failing to appear at the recommitment hearing; (4) the court committed plain error by admitting the examiner's report into evidence without testimony or proper foundation; and (5) the evidence was insufficient to establish all of the elements necessary to extend Rick's commitment under WIS. STAT. § 51.20(1). For the reasons that follow, we reverse the orders extending Rick's commitment and for medication and treatment.

## BACKGROUND

¶2 Rick has been diagnosed with schizoaffective disorder and bipolar disorder and has been subject to WIS. STAT. ch. 51 commitments in the past. In 2017, the Kaukauna Police Department took Rick into custody on an emergency basis after his wife reported that Rick "was being delusional and threatened to kill people if they entered his house" and that she was "afraid for herself because [Rick] has been acting so bizarre lately and telling her they are in danger from people." *See* WIS. STAT. § 51.15. After a final hearing on October 30, 2017, Rick was involuntarily committed for a period of six months. The circuit court also entered an order for involuntary medication and treatment. The initial six-month commitment order was extended by stipulation from April 30, 2018, to May 16,

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

2018, and on May 16, 2018, after a hearing, the court ordered another nine-month extension of the commitment and the involuntary medication and treatment order.

¶3      On January 28, 2019, Outagamie County filed a petition to extend Rick's commitment, which was set to expire on February 16, 2019, for one year. Rick was appointed counsel to represent him, and a recommitment hearing was scheduled for February 15, 2019. An amended "Evaluation, Recommendation, and Petition for Recommitment," containing notice of the February 15, 2019 hearing, was electronically filed on February 1, 2019. Although Rick's attorney appeared at the February 15 hearing, Rick failed to attend. As a result, the circuit court found good cause to temporarily extend Rick's commitment and medication orders for thirty days to reschedule "a new hearing to effectuate having [Rick] in [c]ourt for such hearing." On February 19, 2019, the County filed another amended "Evaluation, Recommitment, and Petition for Recommitment," which contained notice of the new March 7, 2019 hearing date.

¶4      Rick failed to appear at the rescheduled hearing. Rick's counsel was, however, in attendance. When the circuit court inquired as to Rick's "whereabouts," counsel reported,

> I did just call him approximately seven minutes ago. I didn't receive an answer, but I did leave a voice mail. I have spoken with him and I thought he was aware of the date, but he did make it clear that he wanted to continue to fight the commitment. So that's the only information I have.

Based on Rick's failure to appear, the County moved for a default judgment, asking that Rick be recommitted for one year based on an examination report prepared by Dr. Marshall Bales, a psychiatrist, and filed with the court. *See* WIS. STAT. § 51.20(9)(a).

3

¶5 In his written examination report, Bales opined that Rick was mentally ill, a proper subject for treatment, and dangerous, such that there is a substantial likelihood, based on Rick's treatment record, that Rick would be a proper subject for commitment if treatment were withdrawn. Bales based his opinion on the events in 2017, when Rick was "having delusional and threatening behavior. He was talking about killing people who entered the home. He thought people were out to get him. His wife feared for her safety and that of the children." The report also referenced events in 2011 when Rick "thought people were poisoning him," "[h]e was driving erratically, putting others in danger," and "[h]e attempted suicide in October 2011 when depressed."

¶6 According to Bales, "[w]hen off commitment, [Rick] has a pattern of voluntarily following with treatment for a while and then decompensat[ing] after noncompliance with psychotropic medications"; thus, Bales opined "that if the commitment was dropped, [Rick] would gradually become noncompliant, become psychotic and dangerous in some way (as has happened several times), be detained and hospitalized, and be a proper subject for commitment again." Bales also recommended that the order for involuntary medication and treatment continue based on Rick "not fully accepting … his severe mental health condition" and his failure to "give full credit to the psychotropic medications, stating his mental health problems are a thing of the past."

¶7 The circuit court "received [Bales' report] as part of the record" without objection. The County did not call any witnesses, and the court took no testimony. The court then inquired whether there was anything the County "want[ed] to cite from" Bales' report. Corporation counsel stated,

> Judge, only that the evaluation is clear that [Rick] is suffering from mental illness. I believe that is schizoaffective disorder, and that he would be a proper

subject for commitment. And if treatment were withdrawn, that he is a proper subject for treatment as well.

The evaluation also indicates that the findings for a medication order were also in place, that the advantages disadvantages and alternatives to medication were explained to the subject. And that due to a mental illness, that he's substantially incapable of applying an understanding of those advantages, disadvantages and alternatives to his or her condition—or to his condition in order to make informed choices as to whether he could accept or refuse psychotropic medications.

Based upon those proposed findings, we would ask that the Court order [Rick] be committed in—recommitted to 51.42 board [sic] for a period of 12 months, and that he be ordered to be administered medications on an involuntary basis. And that the firearm prohibition order be continued.

¶8 When the circuit court asked Rick's counsel if she had anything to add, she questioned whether, based on her notes, the date of the hearing had been moved from March 7 to March 15. According to Rick's counsel, "[O]n the 18th of February, I did mark that I was contacted by judicial assistant Virginia moving the date or asking for a date to be moved to the 15th at 11:00." Counsel acknowledged, however, that "CCAP reflect[s] that this hearing is still set for today" and that she did not "have a notice or anything else. So I'm not sure if that is just an error in my own notes." Rick's counsel did not object to the default judgment, the court's "receipt" of Bales' report, or corporation counsel's discussion of Bales' report on the record.

¶9 The circuit court concluded that Rick had "waived his appearance by failing to show up for court" for a second time, explaining that, as a result, the court was not "going to have a drawn out hearing with testimony." The court entered a default order, extending Rick's commitment for one year, as well as an

accompanying order for involuntary medication and treatment.[3]  The court found, based on Bales' report, that the County had met its burden to prove that Rick is mentally ill, a proper subject for treatment, and dangerous under WIS. STAT. § 51.20(1)(am).  Rick appeals.

## DISCUSSION

¶10    "For a person to be subject to a [WIS. STAT. ch.] 51 involuntary commitment, three elements must be fulfilled: the subject individual must be (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to [himself or herself] or others."  *Langlade County v. D.J.W.*, 2020 WI 41, ¶29, 391 Wis. 2d 231, 942 N.W.2d 277.  The petitioner must prove each of these elements by clear and convincing evidence.  *Id.*  In a recommitment—as is the order at issue in this case—the dangerousness requirement "may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn."  *See* WIS. STAT. § 51.20(1)(am).

*I. Mootness*

¶11    At the outset, we note that Rick is appealing the one-year extension of his WIS. STAT. ch. 51 commitment, which expired on March 7, 2020.  Initially, in lieu of filing its brief, the County filed a motion to dismiss this appeal, arguing that the issues presented in this appeal are moot due to the expiration of Rick's

---

[3] Rick does not separately challenge the order for involuntary medication and treatment. Thus, we will not address it further.  We note only that an order for involuntary medication and treatment requires the existence of a valid commitment order.  *See* WIS. STAT. § 51.61(1)(g)3. Thus, if the recommitment order is reversed, then that result also mandates the reversal of the order for involuntary medication and treatment.

commitment order and a March 6, 2020 circuit court order extending Rick's involuntary commitment for an additional year. The County also filed a motion to supplement the record, pursuant to WIS. STAT. RULE 809.14(1), with the March 6, 2020 order. Rick opposed the motion, arguing that his appeal was not moot due to the collateral consequences of his recommitment, including the firearm ban and "monetary liability associated with Chapter 51 commitments and recommitments."

¶12 By order on September 16, 2020, we denied both the County's motion to dismiss the appeal and its motion to supplement the record, relying on our supreme court's decision in *Marathon County v. D.K.*, 2020 WI 8, 390 Wis. 2d 50, 937 N.W.2d 901, to conclude that Rick's firearm ban was sufficient to render his challenge to his recommitment not moot.[4] On April 26, 2021, on our own motion, we held this case in abeyance pending a decision by our supreme court in *Sauk County v. S.A.M.*, 2022 WI 46, 402 Wis. 2d 379, 975 N.W.2d 162. Our supreme court issued a decision in *S.A.M.* on June 23, 2022.

¶13 One of the issues in *S.A.M.* was whether collateral consequences of expired *recommitment* orders rendered those appeals not moot. Our supreme court observed that in *D.K.*, "we held that an appeal of an expired *initial* commitment order is not moot because the order collaterally subjects the committed person to a continuing firearms ban." *S.A.M.*, 402 Wis. 2d 379, ¶21 (citing *D.K.*, 390 Wis. 2d 50, ¶25). Thus, it explained, "[t]he question before us is whether that same rationale applies to *recommitment* orders." *Id.*, ¶22. The court concluded that "an appeal of an expired recommitment order is not moot because vacating the order

---

[4] On April 22, 2021, however, we entered an order directing the parties to file supplemental briefs addressing the issue of whether Rick's appeal of the circuit court's March 7, 2019 order was moot. We later withdrew that order requesting supplemental briefing.

would still have practical effects on two of the order's collateral consequences— the ability to restore a constitutional right and the liability for the cost of care received while subject to the recommitment order." *Id.*, ¶27.

¶14    After our supreme court issued its decision in *S.A.M.*, Rick requested permission to file supplemental briefs addressing *S.A.M.*'s impact on the question of mootness raised in this case.  We granted that request, but the County subsequently withdrew its argument that this appeal is moot and stated it would not be filing a supplemental brief on the issue.  We agree with the parties that this appeal is not moot based on our supreme court's holding in *S.A.M.*  We therefore turn to the merits of Rick's appellate arguments.

*II.  Notice*

¶15    First, Rick argues that the record does not establish that he received written notice of either of the recommitment hearings scheduled for February 15 or March 7, 2019, as required by WIS. STAT. § 51.20(10).  According to Rick, after he failed to appear at the February 15 hearing, the County filed a second amended petition identifying the March 7 hearing date; however, "[t]he record does not include a separate notice of the hearing to [Rick] or proof that a copy of the Amended Petition was served on [Rick] as required by statute."  Therefore, according to Rick, the failure to give him proper notice of the hearing violated his due process rights, and in the absence of evidence that he received proper notice of the recommitment hearing, the order for recommitment must be vacated.

¶16    In response, the County correctly invokes our supreme court's holding in *Waukesha County v. S.L.L.*, 2019 WI 66, 387 Wis. 2d 333, 929 N.W.2d 140.  In that case, S.L.L., like Rick, was appointed counsel for the final hearing, counsel received notice of and appeared at the hearing, but S.L.L. failed

to appear. *Id.*, ¶¶6-7. Our supreme court determined that service on a party's attorney was sufficient and constituted service upon the party pursuant to WIS. STAT. § 801.14(2), as applied to WIS. STAT. ch. 51 commitments under WIS. STAT. § 51.20(10)(c). *S.L.L.*, 387 Wis. 2d 333, ¶27.

¶17　We subsequently applied *S.L.L.*'s holding in *Marathon County v. R.J.O.*, 2020 WI App 20, 392 Wis. 2d 157, 943 N.W.2d 898, *overruled on other grounds by Waukesha County v. E.J.W.*, 2021 WI 85, 399 Wis. 2d 471, 966 N.W.2d 590. There, we rejected R.J.O.'s claim that the county was required to personally serve her with notice of the recommitment hearing, concluding that "the [c]ounty properly served R.J.O. with notice of the recommitment hearing by providing the requisite notice to her attorney." *Id.*, ¶20.

¶18　We conclude that this case is on all fours with *S.L.L.* and *R.J.O.* on the issue of notice; therefore, the County properly served Rick with notice of the recommitment hearing by providing notice to his attorney. In reply, Rick fails to specifically address the County's argument that service on a party's attorney constitutes service upon the party. *See State v. Chu*, 2002 WI App 98, ¶41, 253 Wis. 2d 666, 643 N.W.2d 878 (argument raised in response brief not disputed in reply may be deemed admitted). Accordingly, we conclude that Rick was properly served with notice of the March 7, 2019 hearing when his attorney was given notice, and there was no due process violation.

*III. Default*

¶19    Rick next argues that his recommitment order must be vacated because the circuit court erred in granting a default judgment against him.[5] "Whether [WIS. STAT.] Chapter 51 allows for entry of default against a respondent for failing to appear at a final recommitment hearing is … a question of law we review de novo." *S.L.L.*, 387 Wis. 2d 333, ¶10.

¶20    Rick first claims, citing *County of Walworth v. Spalding*, 111 Wis. 2d 19, 329 N.W.2d 925 (1983), that "[a] circuit court has no authority to enter a default judgment where a statute provides a specific procedure for handling a person's failure to appear for a hearing."  According to Rick, WIS. STAT. § 51.20(10)(d) provides a procedure for the court to follow where an individual fails to appear for a commitment hearing:  "In the event that the subject individual is not detained and fails to appear for the final hearing the court may issue an order for the subject individual's detention and shall hold the final commitment hearing within 7 days from the time of detention."  *See* § 51.20(10)(d).  Rick therefore asserts that a court "must follow § 51.20(10)(d), issue a detention order, and then conduct the commitment hearing" because the individual has a statutory and a constitutional right to be present at a mental commitment proceeding.

¶21    Our supreme court addressed and rejected these same arguments in *S.L.L.*  *S.L.L.*, 387 Wis. 2d 333, ¶¶31-38.  While the court agreed that S.L.L.

---

[5] To the extent the County argues that Rick forfeited this argument by failing to raise it at the recommitment hearing, we need not decide this question, as we have the authority to disregard forfeiture arguments and address an allegedly forfeited claim on the merits. *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) ("[T]he [forfeiture] rule is one of judicial administration and ... appellate courts have authority to ignore the [forfeiture].").

"unquestionably had a [statutory and constitutional] right to appear at the Extension Hearing," it concluded that this guarantee has not been found to be the "same" as the "guarantee [of] the right to appear in a criminal trial" and that "even constitutionally-protected rights" "may be waived or forfeited." *Id.*, ¶¶33-34. Accordingly, the court concluded that "[c]ircuit courts have the authority, pursuant to WIS. STAT. § 806.02(5),[6] as incorporated by [WIS. STAT. §] 51.20(10)(c), to enter default judgment for failing to appear at properly-noticed hearings in which the court has jurisdiction over the person." *S.L.L.*, 387 Wis. 2d 333, ¶38.

¶22     Like in *S.L.L.*, the facts of Rick's case satisfy the prerequisites for entry of a default judgment under WIS. STAT. § 806.02(5): the circuit court had jurisdiction over Rick; we previously concluded that Rick was properly provided notice of the recommitment hearing when his attorney was given notice; we assume that Rick appeared in the action previously, as none of the parties asserted that Rick did not appear at the initial commitment hearing; and Rick failed to appear at the recommitment hearing.[7] *See S.L.L.*, 387 Wis. 2d 333, ¶38.

---

[6] WISCONSIN STAT. § 806.02(5) provides: "A default judgment may be rendered against any party who has appeared in the action but who fails to appear at trial. If proof of any fact is necessary for the court to render judgment, the court shall receive the proof."

[7] We question whether Rick "failed to appear" at the recommitment hearing in this case. Like in *Waukesha County v. S.L.L.*, 2019 WI 66, ¶7, 387 Wis. 2d 333, 929 N.W.2d 140, Rick's counsel was in attendance at the hearing, but Rick was not. Consistent with the rules of civil procedure, which are applicable to proceedings under WIS. STAT. ch. 51, *see* WIS. STAT. § 51.20(10)(c); *S.L.L.*, 387 Wis. 2d 333, ¶27, Rick is presumably allowed to appear by counsel, *see Sherman v. Heiser*, 85 Wis. 2d 246, 254-55, 270 N.W.2d 397 (1978) (explaining that a party in a civil action does "'appear' at trial by the fact that … counsel appeared" and that trial judges should not grant default judgment under WIS. STAT. § 806.02(5) when a person appears through an attorney based on WIS. STAT. § 757.27 (1977-78), the statutory predecessor to SCR 11.02).

(continued)

¶23 Therefore, we agree with the County that based on *S.L.L.*, the circuit court did have *authority* to enter a default judgment. The issue is whether the court appropriately granted a default judgment under the facts of this case. "We review a circuit court's decision on whether default judgment is warranted for an erroneous exercise of discretion because 'the decision to grant a motion for default judgment is within the sound discretion of the circuit court.'" *Id.*, ¶10 (quoting *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶15, 242 Wis. 2d 153, 624 N.W.2d 375).

¶24 While Rick concedes that our supreme court found S.L.L. in default, he argues that the facts of that case are distinguishable from the facts here, and, accordingly, the circuit court erroneously exercised its discretion in finding that Rick forfeited his right to be present at the recommitment hearing. In particular, Rick focuses on the fact that S.L.L. was homeless and could not be located. Our supreme court highlighted this fact when it stated: "Even today, [S.L.L.] does not say what the [c]ounty should have done to reach her. Neither does the dissent.

---

In *S.L.L.*, however, our supreme court upheld a default judgment despite the fact that S.L.L.'s attorney was in attendance at the hearing. In that case, our supreme court did not address counsel's appearance at the hearing in terms of its application to mental commitment proceedings or its impact on WIS. STAT. § 806.02(5). *See S.L.L.*, 387 Wis. 2d 333, ¶¶31-38; *cf. Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶17, 246 Wis. 2d 1, 629 N.W.2d 768 (concluding, in a termination of parental rights case, that the case did "not fall within the scope of … § 806.02(5)" because "[a]lthough [the parent] was not physically present at the fact-finding hearing, she nevertheless 'appeared' at the hearing via her counsel"). Our supreme court also did not address whether it was therefore concluding that WIS. STAT. ch. 51 *requires* a subject individual's appearance, rather than just providing the subject individual the *right* to appear, which seems to be implied by the court's decision. The parties have also not argued that Rick was ordered to appear at the March 7, 2019 hearing, such that he could have been defaulted on different grounds. *Cf. Evelyn C.R.*, 246 Wis. 2d 1, ¶17. (We note again that the court rescheduled the recommitment hearing "to effectuate having [Rick] in [c]ourt for such hearing," but the order rescheduling the hearing does not specifically order Rick to appear.) Nevertheless, we are bound by the court's conclusion in *S.L.L.* that S.L.L. "failed to appear for trial," despite her attorney's appearance, and "[t]hat [and other factors] satisf[y] the prerequisites for entry of default under § 806.02(5)." *S.L.L.*, 387 Wis. 2d 333, ¶38; *see also Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

That point cannot be emphasized enough. They both fault the [c]ounty for the method of service, but offer nothing but a shrug as an alternative." *Id.*, ¶29 n.19. Additionally, Rick argues that his case is distinguishable because S.L.L. violated the terms of her treatment conditions by failing to provide the county with her current address, *id.*, ¶30, while Rick was "fully compliant with treatment conditions obligating him to provide Outagamie County with his current address."

¶25 Here, the County knew Rick's address and phone number, and, as Rick argues, the address and phone number were included on the amended petition for recommitment, which provided notice of the March 7, 2019 hearing date. Further, Rick's counsel alerted the circuit court that Rick may not have been provided with the correct hearing date. Although counsel first stated that she "thought he was aware of the date," she later stated that her notes indicated that a judicial assistant had contacted her about moving the hearing date to March 15, 2019. Thus, it is possible that Rick may have been told that the hearing would occur on March 15 and not March 7. At that point, the court then arguably knew there was an issue concerning Rick's notice of the hearing, and it failed to properly inquire about this subject. Had the court done so, it could have learned that the County had Rick's address and phone number and could easily detain him pending a future hearing.

¶26 As Rick argues, our supreme court made clear in *S.L.L.* that its conclusion that a default judgment was appropriate was based on the facts of that particular case. *See id.*, ¶34. Under the facts in this case, however, we conclude that the circuit court erroneously exercised its discretion by granting a default judgment.

¶27 "When a circuit court exercises its discretion, it must explain on the record its reasons for its discretionary decision 'to ensure the soundness of its own decision making and to facilitate judicial review.'" *State v. Scott*, 2018 WI 74, ¶38, 382 Wis. 2d 476, 914 N.W.2d 141 (citation omitted). The court must elaborate on its reasons because "a circuit court's discretionary decision 'is not the equivalent of unfettered decision-making.'" *Id.* (citation omitted). "The circuit court's explanation on the record of its exercise of discretion must demonstrate that the circuit court examined the relevant facts, applied a proper standard of law, and used a rational process to arrive at a conclusion that a reasonable judge would make." *Id.*, ¶39. "If a circuit court fails to explain its exercise of discretion on the record, it has erroneously exercised its discretion." *Id.*

¶28 Here, the record does not demonstrate that the circuit court's discretion was in fact exercised. On the record, the court merely stated that Rick had "waived his appearance by failing to show up for court." The court based its order for Rick's default solely upon his nonappearance at the rescheduled recommitment hearing without inquiring about why Rick failed to appear or whether he could be easily located and detained. Further, while we acknowledge that the court's choice of whether to issue a detention order for Rick was a discretionary decision, as WIS. STAT. § 51.20(10)(d) is permissive, the court failed to weigh the options of a default judgment versus a detention order on the record.[8]

---

[8] As discussed previously, mental commitments are civil proceedings, and therefore an attorney may appear for a litigant. *See Sherman*, 85 Wis. 2d at 254-55. Rick was not ordered by the circuit court to appear. Thus, with Rick's counsel present, counsel's statement on the record that Rick wished to contest his recommitment, and nothing in the record stating that Rick was stipulating to the recommitment, the matter was contested. Nonetheless, neither party asserts that counsel could have proceeded with the evidentiary hearing in Rick's absence, so we do not address that issue.

¶29 If the circuit court fails to explain its exercise of discretion on the record, we may search the record to determine whether it supports the court's discretionary decision. ***Randall v. Randall***, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737. While the circuit court correctly noted that Rick failed to appear at two hearings—with the first hearing being adjourned to give him the opportunity to appear—and it therefore had the authority to enter a default judgment, we nevertheless conclude that the court's finding that Rick forfeited his right to appear at the recommitment hearing was erroneous under the facts of this case.

¶30 Specifically, the circuit court failed to consider that Rick's counsel had communicated with Rick and was aware of how to contact him, Rick wanted to contest his recommitment, Rick had been fully compliant with his prior commitment order, and counsel was concerned about whether Rick had been provided with an incorrect hearing date. Further, the County was aware of Rick's address and phone number and could have easily located and detained Rick pursuant to WIS. STAT. § 51.20(10)(d) until a rescheduled hearing was held.

¶31 As our supreme court has recognized, "default judgment is the ultimate sanction. The law prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the issues. As a corollary to this preference, default judgments are regarded with particular disfavor." ***Split Rock Hardwoods v. Lumber Liquidators***, 2002 WI 66, ¶64, 253 Wis. 2d 238, 646 N.W.2d 19. We believe this to be particularly true where, as in mental commitments, a person's liberty interest is at stake and he or she has the right to be present at the commitment or recommitment hearing. *See* WIS. STAT. § 885.60(1), (2)(a); ***Addington v. Texas***, 441 U.S. 418, 425 (1979) (recognizing that "civil commitment for any purpose constitutes a significant deprivation of liberty that

15

requires due process protection"); *S.L.L.*, 387 Wis. 2d 333, ¶33. Thus, under the circumstances presented here, the decision to grant a default judgment was an erroneous exercise of discretion.[9]

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[9] Rick makes several additional arguments on appeal that we need not address. First, Rick argues that the evidence offered at the recommitment hearing should have been excluded. According to Rick, the circuit court committed plain error by admitting Bales' report into evidence without requiring any foundation to be laid and by allowing corporation counsel to read portions of Bales' report into evidence, as Bales' report and counsel's statements were inadmissible hearsay. *See R.S. v. Milwaukee County*, 162 Wis. 2d 197, 199-200, 204, 207, 470 N.W.2d 260 (1991) (holding that an examiner's written report, entered into evidence without the examiner's testimony, was inadmissible hearsay at a *contested* guardianship proceeding and that the examiner must testify). As we conclude that the court erred by granting a default judgment against Rick, the recommitment order is reversed on that basis, and we need not consider these evidentiary issues. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

Rick also argues that the evidence—Bales' report—was insufficient to establish that he is mentally ill, a proper subject for treatment, and dangerous under WIS. STAT. § 51.20(1). Again, as we resolve this case on other grounds, we do not address Rick's challenge to the sufficiency of the evidence. *See Blalock*, 150 Wis. 2d at 703. We also do not address Rick's undeveloped argument that the County did not allege with specificity which statutory standard of dangerousness it was relying on for Rick's recommitment. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).