COURT OF APPEALS
DECISION
DATED AND FILED

November 5, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP318**

Cir. Ct. No. 2022CV82

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

JENNIFER CIESAR AND JOHN A. CIESAR,

   PLAINTIFFS-APPELLANTS,

 V.

COTTAGE ROW, LLC C/O PLF REGISTERED AGENTS, LLC AND
JOHN GREGOR DOMAN,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Door County: JAMES A. MORRISON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jennifer Ciesar and John A. Ciesar appeal from a circuit court order granting John Doman's motion for summary judgment.   On appeal, Jennifer and John contend, among other things, that the court erred by concluding their claim for judicial dissolution of Cottage Row, LLC was issue precluded.   Jennifer and John also challenge the court's use of a "blind-bid procedure" to determine Jennifer, John, and Doman's respective interests in Cottage Row.[1]  For the reasons that follow, we affirm.

## BACKGROUND

¶2     The underlying dispute in this case dates back to 2003, when John G. Ciesar[2] and Doman created Cottage Row for purposes of condominium development in Door County.   Ciesar and Doman each obtained a fifty percent interest in the business based upon their respective $1,000 investments.   An operating agreement for Cottage Row stated that all decisions had to be by majority vote, with each member's voting rights being "in proportion to that [m]ember's share of the company's net profits and losses."

¶3     Ciesar died in 2008.   At the close of Ciesar's estate in 2012, each of his three children, including Jennifer and John, received an interest in Cottage Row.   Jennifer later purchased the third child's interest.   Thereafter, Jennifer and John came to believe that Ciesar had invested another $500,000 into Cottage Row

---

[1]  Cottage Row joined in, and incorporated by reference, Doman's appellate brief.

[2]  Jennifer Ciesar and John A. Ciesar are the children of John G. Ciesar.   To avoid confusion, we refer to the children using their first names.   We refer to John G. Ciesar as "Ciesar."

in 2006, while Doman's interest remained based on his original $1,000 investment. They also believed that Ciesar had loaned money to Cottage Row.

¶4 In 2020, Jennifer and John sued Doman in Door County case No. 2020CV72, alleging that Doman had breached the operating agreement by taking actions without the required majority vote, had violated his fiduciary duties, and had altered records to disguise the fact that Ciesar had been a majority member since 2006.[3] Jennifer and John asserted several claims, including conversion, misappropriation, self-dealing, breach of fiduciary duty, breach of the implied duty of good faith and fair dealing, breach of contract, breach of the operating agreement, and misrepresentation. The 2020 lawsuit also sought a forensic accounting of Cottage Row's assets. In addition, Jennifer and John argued that their interests in Cottage Row should be adjusted to reflect Ciesar's 2006 investment.

¶5 The circuit court granted summary judgment to Doman in the 2020 lawsuit, concluding that Jennifer and John could not succeed on their claims either because the underlying facts did not support the claims, the claims were barred by the applicable statute of limitations, or the claims were prohibited by a 2016

---

[3] The Honorable James A. Morrison presided over both the present lawsuit and the 2020 lawsuit.

release agreement between the parties. Jennifer and John did not appeal the court's final order in that case.[4]

¶6 In 2022, Jennifer and John commenced the present lawsuit seeking judicial dissolution of Cottage Row and asking that "an accountant/referee … be appointed to determine the debts of the company and the percentage of membership interests." *See* WIS. STAT. § 183.0701(1)(d) (2021-22).[5] Following the commencement of the present lawsuit, Doman served Jennifer and John with a notice of sanctions under WIS. STAT. § 802.05(3)(a)1.

¶7 At a scheduling conference in the present case, the circuit court stated that it would not hire a forensic accountant because the court could "do the

---

[4] Only a small number of documents from the 2020 lawsuit are included in the record before us. Insofar as Jennifer and John argue that the record is insufficient to support Doman's summary judgment motion, we disagree. Both parties relied on the underlying facts from the 2020 lawsuit in their briefing before the circuit court, and, as noted, a portion of the 2020 lawsuit record is included in the record in this case. Moreover, the court made factual references to the 2020 lawsuit, to which no party objected, in issuing its order granting summary judgment to Doman.

We note that following their appeal in this case, Jennifer and John filed in the circuit court a motion to supplement the record. The court denied that motion in a written order. In their reply brief, and for the first time, Jennifer and John appear to challenge the court's order, arguing that the record is deficient because the court denied their motion. To the extent we have jurisdiction to review the court's order denying Jennifer and John's motion to supplement the record, *see State v. Baldwin*, 2010 WI App 162, ¶61, 330 Wis. 2d 500, 794 N.W.2d 769, we refuse to address their argument because they failed to raise it in their brief-in-chief, *see A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 493, 588 N.W.2d 285 (Ct. App. 1998).

[5] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Jennifer and John's complaint cited WIS. STAT. § 183.0902 (2019-20), in support of their judicial dissolution claim. The statute outlining judicial dissolution was repealed and recreated as WIS. STAT. § 183.0701(1)(d) prior to the commencement of the present lawsuit. *See* 2021 Wis. Act. 258, § 616. Jennifer and John's subsequent filings before the circuit court cited the current version of the statute.

mathematics." Further, the court outlined a bidding procedure in which each party would "provide a number at which they will buy or sell" Cottage Row. Neither party objected to the bidding procedure. Following the hearing, the parties signed and submitted a stipulation. The stipulation provided that each party would

> submit under seal (via first class mail) an amount of money that the party would pay to buy out the other party's interest in [Cottage Row] (or conversely sell its interest to the other party). Each party shall submit one amount to the [c]ourt no later than September 30, 2022. The party which makes the highest offer shall have the right to buy out the other party's interest in Cottage Row at the conclusion of this case.

The stipulation also provided a summary judgment briefing schedule, with each party filing their opposing motions and supporting documents *after* the bidding deadline.[6] The circuit court subsequently signed an order on September 13, 2022, memorializing the stipulation, which included substantially the same language as the stipulation.

¶8 Pursuant to the stipulation and the circuit court's order, the parties submitted their bids by first class mail. Doman offered to purchase Jennifer and John's respective interests in Cottage Row for $65,000. Conversely, Jennifer and John offered $500,000 "for an undivided one-half interest in Cottage Row … to [Doman] to purchase his alleged [fifty percent] interest. This offer is being made simply to comply with the [circuit court's] [o]rder as [p]laintiffs believe that they are" the full owners of Cottage Row. The court then sent a letter to the parties

---

[6] In a letter to the circuit court following the hearing, Jennifer and John requested that the court "hear the motions on summary judgment before requiring the parties to submit their highest bid" because "Doman may not have an interest in Cottage Row." This letter was dated September 6, 2022, while the signed stipulation was dated September 13, 2022.

notifying them that Jennifer and John provided the highest bid and that it expected the funds to be deposited within thirty days.

¶9      Jennifer and John then wrote the circuit court stating that they had not objected to the bidding procedure but had objected to the timing of the bidding.  They alleged that the bidding procedure placed them "at a distinct disadvantage" because it "require[d] an early bid without determining the issues of the case."  Jennifer and John requested that the court "postpone any funding of the bid until the [c]ourt makes its ultimate decisions" on the summary judgment motions.

¶10     On November 18, 2022, the circuit court ordered that Jennifer and John submit the funds to purchase Doman's interest in Cottage Row no later than December 9, 2022.  The court stated that "[i]n the event that they shall fail to do so, they shall forfeit their right to purchase" Cottage Row, and the court would then offer Doman the right to purchase the company for $65,000.  Jennifer and John filed a motion for reconsideration, asserting that it was their understanding that if they "submitted the high bid, they would have the opportunity to purchase [Doman]'s interest in Cottage Row at the conclusion of this case" and "that they were setting a price that they would require to sell their interest."  The court denied Jennifer and John's motion for reconsideration related to the bidding procedure.  Ultimately, Jennifer and John did not deposit the funds, and Doman paid $65,000 for their interests.

¶11     The parties also filed competing motions for summary judgment.  In a written decision, the circuit court granted Doman's motion for summary judgment, dismissing Jennifer and John's claims with prejudice.  As is relevant here, the court concluded that Jennifer and John's dissolution claim was barred by

issue preclusion—despite the fact that the claim was not raised in the 2020 lawsuit—because the claim "merely rehashed virtually verbatim all of the same facts, circumstances, and resulting claims that were alleged" in the 2020 lawsuit. The court also found that the present lawsuit was filed in bad faith because it was an attempt to "circumvent" the court's rulings in the 2020 lawsuit. Accordingly, the court awarded attorney fees and costs to Doman.[7]

¶12 Jennifer and John now appeal from the circuit court's order granting summary judgment to Doman. They also challenge the court's use of the "blind-bid procedure."

## DISCUSSION

### I. Issue preclusion and summary judgment

¶13 We review a grant of summary judgment de novo. *Munger v. Seehafer*, 2016 WI App 89, ¶46, 372 Wis. 2d 749, 890 N.W.2d 22. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶14 "The doctrine of issue preclusion … is designed to limit the relitigation of issues that have been actually litigated in a previous action." *Dostal v. Strand*, 2023 WI 6, ¶22, 405 Wis. 2d 572, 984 N.W.2d 382 (citation omitted).

---

[7] The actual value of the award was not determined until after Jennifer and John initiated this appeal. Regardless, Jennifer and John do not challenge the circuit court's awarding of attorney fees to Doman.

When analyzing whether issue preclusion applies, we consider two questions: "(1) whether issue preclusion can, as a matter of law, be applied, and if so, (2) whether the application of issue preclusion would be fundamentally fair." *Id.*, ¶23.

¶15 Under the first question, "we must determine whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment."[8] *Id.*, ¶24. "An issue is 'actually litigated' when it is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" *Id.* (citation omitted).

¶16 Regarding the second part of the analysis, "[t]he case law has set forth five factors, which are not exclusive or dispositive, to aid a circuit court in determining whether application of issue preclusion is fundamentally fair." *Id.*, ¶23 n.7 (citation omitted). These factors include:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of [issue preclusion] to be

---

[8] The "actually litigated" standard differs from claim preclusion in that claim preclusion "extends to all claims that either were or *could have been* asserted in the previous litigation." *Dostal v. Strand*, 2023 WI 6, ¶24, 405 Wis. 2d 572, 984 N.W.2d 382. The circuit court granted Doman's motion for summary judgment after concluding that Jennifer and John's claims were barred by issue preclusion and claim preclusion. Because we conclude that issue preclusion bars the claims, we do not address claim preclusion.

fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.* (alteration in original; citation omitted).

¶17 We independently review the first question—whether the issue was actually litigated. *Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶37, 300 Wis. 2d 1, 728 N.W.2d 693. A circuit court's ultimate decision on the fundamental fairness of applying issue preclusion is an exercise of discretion; however, several of the fairness factors present questions of law. *Id.*, ¶38.

¶18 As Doman asserts on appeal, Jennifer and John alleged judicial dissolution as the only cause of action in the present lawsuit, "but the vast majority of the complaint … was used to assert that [they] were entitled to a disproportionate percentage of any proceeds" from the dissolution due to Doman's alleged misconduct. Specifically, Jennifer and John alleged in the complaint that judicial dissolution was necessary because "[t]here are disagreements with respect to the monies owed the parties to satisfy outstanding loans. The disagreements also include whether or not the capital contributions of the parties were equal and if Doman owns anything at all." To effectuate their judicial dissolution claim, Jennifer and John requested that the court appoint a forensic accountant to "determine the debts of the company and the percentage of membership interests." In their brief in opposition to Doman's summary judgment motion, Jennifer and John framed their relief sought as follows:

> What the [p]laintiffs are asking for is a determination as to whether or not there were equal capital contributions for purposes of equal distributions upon dissolution, and whether or not one or other parties is a creditor by virtue of either not loaning the company amounts of money equal to what the other member loaned.

¶19    The relief requested in this case—dissolution and a forensic accounting to determine whether Jennifer and John are entitled to a disproportionate percentage of any proceeds from the dissolution—was based on allegations that were "actually litigated" in the 2020 lawsuit, wherein Jennifer and John sought damages via several causes of action. In that lawsuit, the circuit court granted summary judgment to Doman on all of Jennifer and John's claims, including claims related to conversion, misappropriation, self-dealing, and misconduct.

¶20    Although the specific claim for judicial dissolution was not alleged in the 2020 lawsuit, the allegations made in that case form the sole basis for any claim in the instant case that Jennifer and John are entitled to a disproportionate percentage of the proceeds from a judicial dissolution or that Cottage Row should be dissolved at all. In fact, the complaint in this case specifically referenced the 2020 lawsuit, stating that each of the grounds for dissolution listed in WIS. STAT. § 183.0701(1)(d) were met because Jennifer and John alleged that Doman breached his fiduciary duties. We note that the 2020 lawsuit, by itself, did not necessarily preclude a judicial dissolution claim in the future; Cottage Row still existed following the 2020 lawsuit. Rather, the flaw in Jennifer and John's present lawsuit is that they asked the circuit court to re-adjudicate, through forensic accounting, whether Doman engaged in certain conduct as a means to obtain a disproportionate percentage of the proceeds from a dissolution. In making that request, Jennifer and John seek an adjudication based exclusively on facts from the 2020 lawsuit. Thus, issue preclusion can be applied as a matter of law. *See Dostal*, 405 Wis. 2d 572, ¶23.

¶21    Moreover, the circuit court did not determine that it would be unfair to apply issue preclusion to the facts of this case. The court did not erroneously

exercise its discretion in this regard. *See **Randall v. Randall***, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737 ("Although the proper exercise of discretion contemplates that [a] circuit court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision."). Jennifer and John could have, but did not, appeal from the court's decision granting summary judgment to Doman in the 2020 lawsuit. Further, as explained above, the claims brought in the 2020 lawsuit are not factually distinct from the judicial dissolution claim in this case. Moreover, Jennifer and John have not cited any "intervening contextual shifts in the law."[9] *See **Dostal***, 405 Wis. 2d 572, ¶23 n.7 (citation omitted).

¶22 Despite the foregoing, Jennifer and John argue that it would be contrary to public policy to apply issue preclusion to this fact pattern because doing so would incentivize future litigants asserting individual claims against a fellow LLC member "to include a claim for dissolution in that lawsuit or forfeit their right to do it if they lose," turning "individual disagreements into life and death struggles for the survival of the business." However, Jennifer and John failed to make this argument before the circuit court, which is particularly problematic given the standard of review we apply to the second question in an issue preclusion analysis. We therefore deem the argument forfeited. *See **State Farm Mut. Auto. Ins. Co. v. Hunt***, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633.

---

[9] Jennifer and John argue that the difference "between law and equity" constitutes an "intervening contextual shift[] in the law." A shift in law requires an intervening change in law; an already existing difference in the law is not sufficient. *See **Aldrich v. LIRC***, 2012 WI 53, ¶¶117-31, 341 Wis. 2d 36, 814 N.W.2d 433.

¶23 Even if we were to address this argument, the circuit court found that Jennifer and John filed the present lawsuit and alleged a different cause of action in an attempt to get another "kick at the cat." Stated differently, the court found that the present lawsuit was filed in an effort to obtain compensation for their failed claims. This finding is not clearly erroneous, and it leaves Jennifer and John's above argument without merit. Further, and as discussed previously, the 2020 lawsuit, by itself, did not necessarily preclude a judicial dissolution claim in the future.

¶24 Jennifer and John further contend that the circuit court erred by failing to determine whether there were any issues of material fact on the judicial dissolution claim and by failing to acknowledge that a claim for judicial dissolution remained feasible because "[i]mpasse is grounds for dissolution." However, whether there was a genuine issue of fact underlying the judicial dissolution claim was irrelevant once it was determined that the claim is barred as a matter of law. Here, the sole basis for Jennifer and John's dissolution claim was that "[t]here are disagreements with respect to the monies owed the parties to satisfy outstanding loans." As discussed in detail above, this claim is barred by issue preclusion, and, therefore, the court properly granted summary judgment to Doman.

¶25 Jennifer and John also assert that the equitable nature of judicial dissolution prevents the application of issue preclusion because the reasons for the circuit court's previous rulings in the 2020 lawsuit—namely, the applicable statute of limitations to some of the claims in that lawsuit—would not present the same obstacle in the present case. However, the cases cited by Jennifer and John do not

support the contention that issue preclusion should be disregarded simply because a different cause of action may have been successful.[10]  *See* ***Paige K.B. ex rel. Peterson v. Steven G.B.***, 226 Wis. 2d 210, 219, 594 N.W.2d 370 (1999) ("[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, *that determination is conclusive in subsequent suits based on a different cause of action* involving a party to the prior litigation." (alteration in original; emphasis added; citation omitted)).

## II.  Bid procedure

¶26    Jennifer and John next assert that the circuit court erred by using a "blind-bid procedure."  Specifically, they argue that the court should have ruled on the summary judgment motions prior to accepting bids from Jennifer and John, on the one hand, and Doman, on the other hand.

¶27    Jennifer and John overlook the fact that the procedure was not objected to at the hearing when the circuit court suggested it.  Equally important, the parties signed and submitted a stipulation outlining the process they would use to submit their bids, which included a summary judgment briefing schedule.  That schedule outlined that the bidding process would occur before the court considered the parties' motions for summary judgment.  The court's subsequent order used substantially the same language as the stipulation.  Although Jennifer and John submitted a letter to the court objecting to the schedule and the timing of the

---

[10] Jennifer and John also attempt to relitigate the circuit court's determination that the 2016 release agreement between the parties prevented recovery.  Regardless, that claim was part of the underlying basis for the judicial dissolution claim, was resolved in the 2020 lawsuit, and Jennifer and John decided not to file an appeal in that case.

court's decision on the issues, the stipulation was signed and submitted after that objection.

¶28 Following the submission of the bids, the circuit court offered Jennifer and John an option not to buy Doman's interest in Cottage Row. In that event, Doman would be provided an opportunity to purchase their interests for $65,000. This option was in line with the stipulation and the court's order. Further, if Jennifer and John were concerned with the summary judgment issue being decided after the bidding procedure, they could have conditioned their bid on the court's ruling. For example, Jennifer and John could have offered a lower bid if the court granted Doman's summary judgment motion—i.e., if Jennifer and John would be left with a fifty-percent total interest in Cottage Row. In addition, Jennifer and John fail to cite any authority dictating that the court's suggested bidding procedure was in error. *See generally* WIS. STAT. § 802.12(2)(a) (providing a circuit court the authority to sua sponte order parties to engage in direct negotiation).

¶29 Further, Jennifer and John argue that the September 13, 2022 order did not address "the possible failure of the high bidder to either buy or sell at the higher amount or to be forced to sell at the lower amount if it did not do so." According to Jennifer and John, the circuit court sua sponte added this provision to the stipulation and order. But the stipulation and order both provided that "[t]he party which makes the highest offer shall have the right to buy out the other party's interest in Cottage Row at the conclusion of this case." It follows, then, that if the higher bidder refuses to buy the other's interest, then the next highest bidder shall have that opportunity. The court did not err by requiring Jennifer and John to either buy Doman's interest or lose their right to do so.

### III. Attorney fees

¶30    On appeal, Doman filed a motion with this court for attorney fees and costs.  As a basis, Doman alleged that Jennifer and John's appeal was frivolous and filed in bad faith.  *See* WIS. STAT. RULE 809.25(3); WIS. STAT. § 895.044.  In particular, Doman contended that Jennifer and John's appeal with respect to claim preclusion is frivolous.

¶31    Although we affirm the circuit court's order, we have done so on the grounds that issue preclusion bars Jennifer and John's judicial dissolution claim in this case.  We have not analyzed or affirmed the circuit court's decision on claim preclusion grounds, nor have we concluded that Jennifer and John's arguments in that regard are frivolous.  *See **Thompson v. Ouellette***, 2023 WI App 7, ¶43, 406 Wis. 2d 99, 986 N.W.2d 338.  We, therefore, deny Doman's motion for attorney fees and costs under WIS. STAT. RULE 809.25(3).

*By the Court.—*Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.