COURT OF APPEALS
DECISION
DATED AND FILED

July 1, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP213**

STATE OF WISCONSIN

Cir. Ct. No. 2023TP3

IN COURT OF APPEALS
DISTRICT III

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO I. L. B.,
A PERSON UNDER THE AGE OF 18:

ONEIDA COUNTY,

    PETITIONER-RESPONDENT,

 V.

J. B.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Oneida County: DANIEL L. OVERBEY, Judge. *Affirmed.*

¶1      GILL, J.[1]  Joseph[2] appeals from an order terminating his parental rights to his son, Isaac.  On appeal, Joseph argues that the circuit court erroneously exercised its discretion during the dispositional phase of the termination of parental rights (TPR) process by failing to explicitly consider one of the statutorily required factors for determining Isaac's best interests.  Specifically, Joseph argues that the court failed to consider whether Isaac had substantial relationships with Joseph or with the paternal family members who wished to help raise Isaac, and instead considered if Isaac would be harmed if he were removed from his foster family.  Joseph also argues that the court failed to consider if the relationship between Isaac and his paternal grandparents "was possible and had been frustrated" by the County's "inaction."[3]  We reject Joseph's arguments and affirm the circuit court's order.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply."  RULE 809.107(6)(e).  Conflicts in this court's calendar have resulted in a delay.  It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case.  *See* WIS. STAT. RULE 809.82(2)(a); *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).  Accordingly, we extend our deadline to the date this decision is issued.

[2]  For ease of reading and to protect confidentiality, we refer to the appellant in this matter using a pseudonym, rather than his initials, and we do the same for any of Joseph's family members referenced in this opinion.

[3]  A contested proceeding for the termination of parental rights involves a two-step procedure.  *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402.  The first step is a factfinding hearing, in which a jury or circuit court determines "whether any grounds for the termination of parental rights have been" proved.  *Id.*, ¶26; WIS. STAT. § 48.424(3).  The termination proceedings then move to the second step, a dispositional hearing, at which the circuit court must consider the best interests of the child.  WIS. STAT. § 48.426(2).

## BACKGROUND

¶2      In May 2023, Oneida County filed a TPR petition, alleging that grounds existed to terminate Joseph's parental rights based upon Isaac's status as a child continuing to be in need of protection or services under WIS. STAT. § 48.415(2) (continuing CHIPS).[4]  Following a trial, a jury found that grounds existed to terminate Joseph's parental rights to Isaac, and the matter proceeded to the dispositional phase.

¶3      During the dispositional hearing, the circuit court heard testimony from Jacqueline Zivko, a social worker for the County, and Elizabeth Zastrow, an employee with Lutheran Social Services (LSS).  Zivko testified that Isaac, who was five years old at that time, had been removed from Joseph's care when Isaac was two years old and that since Isaac's removal, Joseph had never visited Isaac, despite Zivko's offers to set up visitation.  Zivko stated that Isaac had been living with his foster family for almost two years and that Isaac's foster family had expressed an interest in adopting him.  Zivko further stated that the only biological family member that Isaac had contact with was his maternal aunt, with whom Isaac's foster family voluntarily allowed visits.

¶4      Zivko testified that she investigated Joseph's parents as a potential placement for Isaac, but she decided that they were not an appropriate placement due to their medical issues.  Specifically, Zivko mentioned that Joseph's father has

---

[4] The County later filed an amended TPR petition in which it alleged that, in addition to the ground of continuing CHIPS, Joseph abandoned Isaac, pursuant to WIS. STAT. § 48.415(1). During the grounds phase of the TPR process, the County decided to proceed on only the ground of continuing CHIPS.  Joseph does not raise any arguments regarding the County's amended TPR petition alleging the ground of abandonment or the County's decision to proceed only on the continuing CHIPS ground.  Accordingly, we do not discuss the abandonment ground further.

dementia and that living with Joseph's father would be "a very dramatic environment to expose a child of [Isaac's] age to." Zivko acknowledged that she heard testimony during the grounds phase of the TPR process that Joseph's father had a relationship with Isaac before Isaac was removed from his familial home, but she stated that she did not do any specific research into that relationship.

¶5      In describing Isaac's relationship with his foster family, Zivko stated that Isaac refers to his foster parents as "mom and dad," that his foster family takes him to all of his doctor's appointments, and that his foster family involves him in extracurricular activities. Zivko saw no reason to remove Isaac from his current placement because "[h]e has got stability there. The family he's currently placed with is really the only sense of stability he has had. I think [removal] would cause more confusion for him than it would be a benefit for him." Zivko further stated that if Joseph's parental rights were not terminated, Isaac would remain with his foster family, and the CHIPS case would continue.

¶6      Zastrow opined that Isaac was adoptable and that adoption was "substantially likely." Zastrow testified that Isaac's foster parents were interested in adopting him and that there were no reported concerns from social workers regarding the foster parents adopting Isaac. Zastrow noted, however, that she had not yet met with the foster family because "the case was just referred" to her, and her visits typically take place after a TPR occurs.

¶7      The circuit court stated that it had reviewed the guardian ad litem's (GAL) report and agreed with the report's analysis of each of the statutory factors for considering Isaac's best interests. The court subsequently adopted and incorporated the GAL's report into its findings.

¶8      The circuit court noted that it had considered each of the factors for determining Isaac's best interests and that all of the factors supported the termination of Joseph's parental rights. The court then listed each of the factors provided in WIS. STAT. § 48.426(3) and made the following findings:

> [W]hether the child has substantial relationships with the parent or other family members, and whether it would be harmful to sever these relationships. I've already covered that.
>
> I don't believe that to the extent relationships exist, if they are terminated by the adoptive or foster parents, I don't believe it would be harmful to the child. The child is too young to express his wishes, but the child has de facto expressed his wishes by the way that he relates to and refers to his foster parents as mom and dad…. I think it is indicative of his desire to stay in that stable relationship.
>
> And then which kind of leads right into the next one, which is whether the child has been under a more stable and permanent relationship as a result of the termination. And that I just covered, and I think for sure that is the case. And then of course the duration of separation…. [I]t's been years.

The court then entered an order terminating Joseph's parental rights.[5] Joseph now appeals.

---

[5] It does not appear that the circuit court made an explicit oral finding regarding Isaac's adoptability. In its oral ruling, the court stated that it had considered all of the factors set forth in WIS. STAT. § 48.426; and, in its written order, the court stated that it had considered the likelihood of Isaac's adoption after termination. We note that "[a]lthough the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision." *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737. The evidence presented at the dispositional hearing was uncontested that Isaac was an adoptable child. Further, Joseph does not raise any arguments on appeal regarding Isaac's adoptability. Accordingly, the record supports the court's implicit finding that Isaac was adoptable.

**DISCUSSION**

¶9    Joseph argues that the circuit court erroneously exercised its discretion during the dispositional phase by failing to consider whether Isaac had substantial relationships with Joseph or with the paternal family members who wished to help raise Isaac, and instead considered if Isaac would be harmed if he were removed from his foster family.  Joseph further argues that the court erred by failing to consider whether a relationship between Isaac and his paternal grandparents "was possible and had been frustrated" by the County's "inaction."

¶10    The ultimate determination of whether to terminate parental rights is discretionary with the circuit court and we will sustain the court's ultimate determination if there is a proper exercise of discretion.  *State v. Margaret H.*, 2000 WI 42, ¶¶27, 32, 234 Wis. 2d 606, 610 N.W.2d 475.  A proper exercise of discretion requires the court to apply the correct standard of law to the facts presented. *Id.*, ¶32.

¶11    The best interests of the child is the prevailing factor and proper legal standard during the dispositional phase of the TPR process.  *See id.*, ¶33; *State v. B.W.*, 2024 WI 28, ¶7, 412 Wis. 2d 364, 8 N.W.3d 22.

> In considering the best interests of the child … the court shall consider but not be limited to the following:
>
> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3). "While it is within the province of the circuit court to determine where the best interests of the child lie, the record should reflect adequate consideration of and weight to each factor." *Margaret H.*, 234 Wis. 2d 606, ¶35.

¶12 Joseph argues that the circuit court "did not discuss or consider any possible harm from severing the legal relationship with the child's father, or from the paternal family members who wished to help raise [Isaac]. Instead, it focused only on the potential harm to the child from moving him from his foster parents."

¶13 The record contradicts Joseph's argument. As noted above, the circuit court adopted and incorporated the GAL's report into its findings of fact. The report discussed and analyzed each of the required factors in WIS. STAT. § 48.426.[6] Further, the court mentioned the substantial relationships factor during

---

[6] Regarding whether Isaac had a substantial relationship with Joseph and his paternal family relationships, the GAL's report stated

[Isaac] has not seen [Joseph] nor had any interaction with [Joseph] in at least four years. He refers to [his foster parents as ["Mom" and "Dad"]. [Isaac] has no memory of his [biological] father and likely has no emotional or psychological connection to his [biological] father. I do not believe it will be harmful to [Isaac] to sever his relationship with his [biological] father.

(continued)

its oral ruling and then found that "to the extent relationships exist, if they are terminated by the adoptive or foster parents, I don't believe it would be harmful to the child."

¶14 While the circuit court did not explicitly discuss any potential harm that would result from severing Isaac's relationship with Joseph and his other paternal family members, the above findings of fact were sufficient to address that factor. Joseph's argument to the contrary amounts to an argument that the court must use the "magic words" regarding this factor, and is unpersuasive. *See **B.W.**,* 412 Wis. 2d 364, ¶78 (noting that "magic word" requirements are strongly disfavored). The court considered all of the factors it was required to consider, and the record supports the court's determination that it was in Isaac's best interests to terminate Joseph's parental rights.

¶15 Joseph next argues that the circuit court erroneously exercised its discretion by "declin[ing] to consider testimony" relating to the relationship between Isaac and his paternal grandparents. Joseph appears to be referring to an

---

Likewise, [Isaac's] last personal interaction with extended paternal family members was four or more years ago and predated the initiation of the CHIPS case. [Isaac's former foster placement] reported that she never had any contact with [Isaac's] paternal grandfather or his step[-]grandmother when she cared for [Isaac]. [Isaac's] paternal grandmother, [Joseph's] mother, sent a couple of Christmas and/or birthday cards to [Isaac] early on but had no direct contact with him nor any contact whatsoever with the [former foster placement]. [Joseph's] step[-]sister reached out via text messaging when [Isaac] was first placed with the [former foster family] but the contact was not sustained. [Isaac] has no connections whatsoever, whether emotional, psychological, or otherwise with any extended paternal family members and he will not be harmed by severing those legal relationships.

instance when the court sustained an objection, during the testimony portion of the dispositional phase, on the relevance of testimony regarding Zivko's efforts to set up visitation between Isaac and his paternal grandparents. In making this argument, it is unclear whether Joseph is asserting that the court failed to consider all of the factors in WIS. STAT. § 48.426(3) or that the court erroneously excluded the admission of that evidence.

¶16 If Joseph intends to argue that the circuit court failed to consider Isaac's relationship with his paternal grandparents, and thereby failed to consider WIS. STAT. § 48.426(3)(c), Joseph misunderstands the court's ruling. During the evidentiary portion of the dispositional phase, an attorney objected to the relevance of the evidence regarding Zivko's efforts to set up visitation between Isaac and his paternal grandparents, arguing that Zivko's efforts only pertained to a ruling made during the grounds phase of the TPR process.[7] The court noted that the question was "repeating testimony we had in the jury trial," but it allowed counsel to respond to the objection. Counsel argued that this testimony was relevant to whether Isaac had a substantial relationship with his paternal grandparents. The court then sustained the objection, stating, "I want you to be mindful that I'm aware of the testimony that was previously given on that topic and it's noted. In fact, I'm looking at the transcript, and it's in there, as well. So go ahead with a different line."

¶17 The circuit court did not categorically decline to consider all evidence regarding Isaac's relationship with his paternal grandparents. Rather, the

---

[7] The objection was raised by Isaac's mother's counsel. Her parental rights are not at issue in this case.

court explicitly stated that it was already aware of that testimony and invited Joseph's counsel to pursue another line of questioning. This does not mean that the court did not consider the evidence. Instead, the court determined it had already received evidence concerning Isaac's relationship with his grandparents, and that additional evidence on this issue offered during the disposition phase of the TPR was repetitive and cumulative. Accordingly, the court properly considered WIS. STAT. § 48.426(3) and thereby did not erroneously exercise its discretion.[8]

> *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[8] To the extent that Joseph intends to argue that the circuit court made an erroneous ruling on the admissibility of evidence, we reject that argument for the same reasons.